# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

RECEIVED
2019 DEC -9  P 12: 50
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

FRED NEKOUEE, individually,

    Plaintiff,

v.

Case No. 2:19-CV-1031

SOUTH EAST INVESTMENT GROUP, LLC,
an Alabama Limited Liability Company,

    Defendant.
_____/

## COMPLAINT
### (Injunctive Relief Demanded)

Plaintiff, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, SOUTH EAST INVESTMENT GROUP, LLC, an Alabama Limited Liability Company (sometimes referred to as "Defendant"), for Injunctive Relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1. Plaintiff, Fred Nekouee, is an individual who resides in Tampa, Florida, in the County of Hillsborough.

2. Defendant's property, a portion of the shopping center known as the Montgomery Towne Center, is located at 4001 Eastern Boulevard, Montgomery, Alabama, 36116, in the County of Montgomery (sometimes referred to as the "subject property").

3. Venue is properly located in the Middle District of Alabama because venue lies in the judicial district of the situs of the subject property. The Defendant's property is located in and does business within this judicial district.

4. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. See also 28 U.S.C. § 2201 and § 2202.

5. Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA. Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility. Mr. Nekouee travels to Montgomery, Alabama every three to six months to attend heavy equipment auctions and/or to visit heavy equipment dealerships, where he compares prices to equipment available in other areas, and to evaluate whether to buy or sell heavy equipment.

6. Fred Nekouee has visited the subject property on several occasions, including March 16, 2018, and October 11, 2018, which visits form the basis of this lawsuit. The Plaintiff plans to return to the property to avail himself of the goods and services offered to the public at the property since he likes the food at Subway and enjoys shopping at Roses, and it is conveniently located close to and/or on the way to/from the heavy equipment auctions and dealerships. He recently visited the subject property on October 24, 2019. He has definite plans to return to this area on March 17-21, 2020 to attend a heavy equipment auction, and on various future dates to be determined, and would like to eat and shop at the Defendant's property if that property is made accessible to him.

7. The Plaintiff has encountered architectural barriers at the subject property. The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, and impaired his ability to access the property due to excessively steep slopes and cross-slopes in the parking lot, changes in

elevation in paths of travel, slopes of walking surfaces, ground openings, and inaccessible restrooms.

8. The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat. The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards. Excessively steep cross slopes can cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair. Similarly, excessive changes in elevation or gaps in walking surfaces made it difficult for him to navigate about the property, and inaccessible restrooms make it difficult or impossible for him to relieve himself, wash his hands, etc.

9. On his visits to the subject property, the Plaintiff encountered excessively steep slopes and cross-slopes in the parking lot, access aisles and walking surfaces, as well as extreme gaps and changes in elevation. The Plaintiff additionally encountered and observed barriers to access in the men's restroom; and so, he also tried to use the women's restroom, in which women's restroom he also encountered and observed similar barriers to access.

10. The Plaintiff is deterred from visiting the subject property even though he enjoys eating and shopping there because of the difficulties he will experience there until the property is made accessible to him.

11. Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant is responsible for complying with the obligations of the ADA. The place of public accommodation that the Defendant owns, operates, leases or leases to is a portion of the

Montgomery Towne Center, which is located at 4001 Eastern Boulevard, Montgomery, Alabama, 36116, in the County of Montgomery

12. Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraphs 18 through 105 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

13. Fred Nekouee desires to visit the subject property not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

14. The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

15. The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

16. The subject property herein was originally constructed subsequent to January 26, 1993.

17. Preliminary inspections of the Defendant's property has shown that violations exist. The violations that Fred Nekouee personally encountered and observed include, but are not limited to:

18. In the parking lot, the parking space for disabled patrons in front of Roses (the set of spaces towards the west) has excessive running slope, as steep as 1:29.4 (3.4%), which is steeper than the maximum allowed slope of 1:48 (2%) slope, in violation of Federal Law 2010 ADAAG § 502.4. This makes it difficult for an individual in a wheelchair to stay stable while getting in and out of the vehicle in the parking space.

19. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

20. In the parking lot, the parking space for disabled patrons in front of Roses (the set of spaces to the east) has excessive running slope, as steep as 1:20 (5%), which is steeper than the maximum allowed slope of 1:48 (2%) slope, in violation of Federal Law 2010 ADAAG § 502.4. This makes it difficult for an individual in a wheelchair to stay stable while getting in and out of the vehicle in the parking space.

21. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

22. In the parking lot, the front section of the parking space for disabled patrons in front of Subway has excessive cross slope, as steep as 1:14.1 (7.1%), which is steeper than the maximum allowed slope of 1:48 (2%) slope, in violation of Federal Law 2010 ADAAG § 502.4. The excessive slope makes it very difficult for an individual in a wheelchair to stay stable while getting in and out of the vehicle in the parking space.

23. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

24. In the parking lot, the front section of the parking space for disabled patrons in front of Roses (the set of spaces to the west) has excessive cross slope, as steep as 1:19.2 (5.2%), which

is steeper than the maximum allowed slope of 1:48 (2%) slope, in violation of Federal Law 2010 ADAAG § 502.4. The excessive slope makes it difficult for an individual in a wheelchair to stay stable while getting in and out of the vehicle in the parking space.

25. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

26. In the parking lot, the front section of the parking space for disabled patrons with van in front of Roses (the set of spaces to the west) has excessive running slope, as steep as 1:26.3 (3.8%), which is steeper than the maximum allowed slope of 1:48 (2%) slope, and makes it difficult for an individual in a wheelchair to stay stable while getting in and out of the vehicle in the parking space in violation of Federal Law 2010 ADAAG § 502.4.

27. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

28. In the parking lot, the front section of the parking space for disabled patrons with van in front of Roses (the set of spaces to the east) has excessive running slope, as steep as 1:18.5 (5.4%), which is steeper than the maximum allowed slope of 1:48 (2%) slope, and makes it difficult for an individual in a wheelchair to stay stable while getting in and out of the vehicle in the parking space in violation of Federal Law 2010 ADAAG § 502.4.

29. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

30. In the parking lot, the parking space for disabled patrons with van in front of Roses (the set of spaces to the west) has excessive cross slope, as high as 1:12.8 (7.8%), which is dangerously steeper than the maximum allowed slope of 1:48 (2%) slope, in violation of Federal

Law 2010 ADAAG § 502.4. The excessive slope makes an individual in a wheelchair very unstable while getting in and out of the vehicle in the parking space.

31. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

32. In the parking lot, the front section of the parking space for disabled patrons with van in front of Roses (the set of spaces to the east) has excessive cross slope, as steep as 1:17.2 (5.8%), which is steeper than the maximum allowed slope of 1:48 (2%) slope, in violation of Federal Law 2010 ADAAG § 502.4. The excessive slope makes an individual in a wheelchair unstable while getting in and out of the vehicle in the parking space.

33. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

34. In the parking lot, the change in elevation from the parking to the accessible ramp for disabled patrons in front of Subway is 1 inch and greater than the maximum allowed change of 0.5 inch which makes an individual in a wheelchair unstable or unable to move in violation of Federal Law 2010 ADAAG §§ 502.4 and 303.3.

35. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

36. In the parking lot, the change in elevation at the storm water drain grate in the access aisle for disabled patrons in front of Subway is 1.5 inches and greater than the maximum allowed level change of 0.5 inch which makes an individual in a wheelchair unstable or unable to move in violation of Federal Law 2010 ADAAG §§ 502.4 and 303.3.

37. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

38. In the parking lot, the change in elevation in the parking space for disabled patrons in front of Roses (the set of spaces to the west) is 1 inch and greater than the maximum allowed level change of 0.5 inch which makes an individual in wheelchair unstable or unable to move in the parking space in violation of Federal Law 2010 ADAAG §§ 502.4 and 303.3.

39. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

40. In the parking lot, the running slope of the front section of the access aisle serving the disabled parking spaces in front of Subway near the storm water drain grate is 1:32.3 (3.1%), which exceeds the maximum allowed slope of 1:48 (2%) in violation of Federal Law 2010 ADAAG § 502.4. This makes it difficult for an individual in a wheelchair to stay stable on the access aisle.

41. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

42. In the parking lot, the running slope of the front section of the access aisle serving the disabled parking spaces in front of Subway at the storm water drain grate is 1:7.1 (14%), which exceeds the maximum allowed slope of 1:48 (2%) in violation of Federal Law 2010 ADAAG § 502.4. This makes it difficult for an individual in a wheelchair to stay stable on the access aisle.

43. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

44. In the parking lot, the running slope of the front section of the access aisle serving the disabled parking spaces in front of Roses (the set of spaces to the west) is 1:32.3 (3.1%), which exceeds the maximum allowed slope of 1:48 (2%) in violation of Federal Law 2010 ADAAG § 502.4. This makes it difficult for an individual in a wheelchair to stay stable on the access aisle.

45. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

46. In the parking lot, the running slope of the access aisle serving the disabled parking spaces in front of Roses (the set of spaces to the east) near the storm water drain grate is 1:9.1 (11%), which dangerously exceeds the maximum allowed slope of 1:48 (2%) in violation of Federal Law 2010 ADAAG § 502.4. This makes it difficult for an individual in a wheelchair to stay stable on the access aisle.

47. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

48. In the parking lot, the cross slope of the front section of the access aisle serving the disabled parking spaces in front of Roses (the set of spaces to the east) near the storm water drain grate is 1:8.2 (12.2%), which dangerously exceeds the maximum allowed slope of 1:48 (2%) in violation of Federal Law 2010 ADAAG § 502.4. This makes it very difficult for an individual in a wheelchair to stay stable on the access aisle.

49. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

50. The running slope of the walking surface from Roses to the Subway is 1:14.3 (7%) and steeper than the maximum allowed slope of 1:20 (5%) in violation of Federal Law 2010 ADAAG § 403.3. This makes it difficult for an individual in a wheelchair to control his speed on the walking surface.

51. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

52. The running slope of the accessibility ramp in front of Roses is 1:9.9 (10.1%) which is greater than the 1:12 (8%) permitted, in violation of Federal Law 2010 ADAAG § 405.2. This makes it difficult for an individual in a wheelchair to climb the ramp and access the store.

53. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

54. The slope of the accessibility curb ramp sides or flares in front of HP Beauty Supply are 1:7.6 (13.2 %) which is greater than the 1:10 (10%) permitted, in violation of Federal Law 2010 ADAAG § 406.3. The excessive flare slope does not accommodate maneuvering for an individual in a wheelchair while climbing up or may cause hazardous overturn while going down the ramp.

55. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

56. The transition from the access aisles of the parking place marked for disabled use, to the curb ramp leading to the accessible route to the closed Winn Dixie contains change of level of 1 inch and greater than the maximum allowed level change of 0.5 inch which makes it very difficult for an individual in a wheelchair to move, in violation of Federal Law 2010 ADAAG §§ 303.3, 405.4.

57. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

58. The drain grate opening in parking lots ground surface in front of Subway is 1 inch wide and greater than the maximum allowed gap of 0.5 inch which stops the wheelchair tires of a disabled individual, in violation of Federal Law 2010 ADAAG § 302.3.

59. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

60. The force needed to open the Roses men's restroom door is 12 pounds which exceeds the maximum allowed force of 5 pounds (22.2 N) which makes it very difficult for an individual in a wheelchair to open the door in violation of Federal Law 2010 ADAAG § 404.2.9.

61. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

62. The Roses men's restroom door pull side maneuvering clearance in a latch approach perpendicular to the doorway is 40 inches where wall clearance is at least 24 inches. This maneuvering clearance is less than 48 inches which is the minimum clearance as required by Federal Law 2010 ADAAG Sections § 404.2.4, and makes it difficult for an individual in a wheelchair to open the door.

63. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

64. The side wall grab bar in Roses men's restroom only extends 48 inches from the rear wall and does not extend the minimum required length of 54 inches (1370 mm) minimum from the rear wall which makes it very difficult for an individual in wheelchair to support himself using the grab bar to sit on the toilet in violation of Federal Law 2010 ADAAG § 604.5.1.

65. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

66. The lavatory pipes and valves under the sink in Roses men's restroom are not insulated which can cause skin burn and injury for an individual in a wheelchair when using the lavatory in violation of Federal Law 2010 ADAAG § 606.3 and 606.5.

67. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

68. The toilet paper dispenser in Roses men's restroom is outside the reach range of an individual in a wheelchair, which dispenser centerline is 13 inches from the front of the water closet and not between 7 inches minimum and 9 inches maximum, and is in violation of Federal Law 2010 ADAAG § 604.7.

69. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

70. The paper towel dispenser lever in Roses men's restroom is 61 inches above the floor, outside the reach range of individual in wheelchair, minimum of 15 inches (380 mm) maximum of 48 inches (1220 mm), and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010 ADAAG § 308.2.1.

71. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

72. In the Roses men's restroom, the door lock requires tight grasping, pinching, or twisting of the wrist and cannot be opened with a closed fist or loose grip of a disabled individual in a wheelchair in violation of Federal Law 2010 ADAAG § 309.4 and 404.2.7.

73. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

74. The accessible toilet compartment door pull in Roses men's restroom is not provided on both sides of the door near the latch which is in violation of Federal Law 2010 ADAAG Section § 604.8.1.2, which makes it difficult for an individual in a wheelchair to open and close the compartment door.

75. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

76. The force needed to open the Roses women's restroom door is 9 pounds which exceeds the maximum allowed force of 5 pounds (22.2 N) which makes it difficult for an individual in a wheelchair to open the door in violation of Federal Law 2010 ADAAG § 404.2.9.

77. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

78. The Roses women's restroom door pull side maneuvering clearance in a latch approach perpendicular to the doorway is 37 inches where wall clearance is at least 24 inches. This maneuvering clearance is less than 48 inches which is the minimum clearance as required by Federal Law 2010 ADAAG Sections § 404.2.4, and makes it difficult for an individual in a wheelchair to open the door.

79. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

80. The rear wall grab bar in the Roses women's restroom only extends 14 inches and 22 inches from the centerline of the water closet and does not extend the minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side which makes it difficult for an individual in a wheelchair to support himself using the grab bar to sit on toilet in violation of Federal Law 2010 ADAAG §§ 604.5.2.

81. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

82. The side wall grab bar in the Roses women's restroom only extends 46 inches from the rear wall and does not extend the minimum required length of 54 inches (1370 mm) minimum

from the rear wall which makes it very difficult for an individual in a wheelchair to support himself using the grab bar to sit on toilet in violation of Federal Law 2010 ADAAG § 604.5.1.

83. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

84. The top height of the lavatory sink in Roses women's restroom is 35 inches which is higher than the maximum counter surface of 34 inches which makes it very difficult for an individual in a wheelchair to use the lavatory in violation of the Federal Law 2010 ADAAG § 606.3.

85. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

86. The lavatory pipes and valves under the sink in the Roses women's restroom are not insulated which can cause skin burn and injury for an individual in a wheelchair when using the lavatory in violation of Federal Law 2010 ADAAG §§ 606.3 and 606.5.

87. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

89. The toilet paper dispenser in the Roses women's restroom is outside the reach range of an individual in a wheelchair, which dispenser centerline is 16.5 inches from the front of the water closet and not between 7 inches minimum and 9 inches maximum, and is in violation of Federal Law 2010 ADAAG § 604.7.

90. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

91. The water closet or toilet in Roses women's restroom does not have the flush control mounted on the open and wide side of the clear floor space, which makes it difficult for an individual in a wheelchair to flush the toilet, in violation of Federal Law 2010 ADAAG § 604.6.

92. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

93. In the Roses women's restroom, the door hardware (latch or lock) requires tight grasping, pinching, or twisting of the wrist and cannot be opened with a closed fist or loose grip of a disabled individual in a wheelchair in violation of Federal Law 2010 ADAAG § 309.4 and 404.2.7.

94. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

95. The accessible toilet compartment door pull in Roses women's restroom is not provided on both sides of the door near the latch which is in violation of Federal Law 2010 ADAAG Section § 604.8.1.2, which makes it difficult for an individual in wheelchair to open and close the compartment door.

96. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

97. The Subway restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is 8 inches and less than the minimum clearance of 18 inches, which makes it difficult for an individual in a wheelchair to open the door in violation of Federal Law 2010 ADAAG Sections § 404.2.4.

98. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

99. The rear wall grab bar in the Subway restroom only extends 9 inches and 27 inches from the centerline of the water closet and does not extend the minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side which makes it difficult for an individual in wheelchair to support himself using the grab bar to sit on toilet in violation of Federal Law 2010 ADAAG §§ 604.5.2.

100. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

101. The protrusion in the Subway restroom of the wall-mounted paper towel dispenser with leading edge between 27 inches (685 mm) and 80 inches (2030 mm) above the finish floor is 10 inches and more than 4 inches (100 mm) maximum horizontally which can cause a head hit accident for a person in a wheelchair or a blind person while approaching the lavatory, in violation of Federal Law 2010 ADAAG § 307.2.

102. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

103. The toilet paper dispenser in the Subway restroom is outside the reach range of an individual in a wheelchair, which dispenser centerline is 5 inches from the front of the water closet and not between 7 inches minimum and 9 inches maximum, and is in violation of Federal Law 2010 ADAAG § 604.7.

104. The removal of the barriers to access referenced in the foregoing paragraph is readily achievable.

105. The accessible features of the facility are not maintained, creating barriers to access for the Plaintiff as set forth herein, in violation of 28 CFR §36.211.

106. All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

107. The discriminatory violations described in paragraphs 18 through 105 are not an exclusive list of the Defendant's ADA violations. Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.

108. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.

109. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

110. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

111. Defendant has discriminated against the individual by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford

all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

112. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

113. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

114. Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

115. Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and

gross receipts of $500,000 or less). All other conditions precedent have been met by Plaintiff or waived by the Defendant.

116. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter subject property to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE**, Plaintiff respectfully requests:

    a. The Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

    b. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

    c. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d.    Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,

Dated: 12/6/19

Patrick Lyle Doman, Esq.
(#ASB-9530-Q41G)
285 South Foster Street
Dothan, AL 36301
(334) 200-6032
patrick.lyle.doman@gmail.com

Brandon A. Rotbart, Esq.
pro hac vice pending
Fuller, Fuller & Associates, P.A.
12000 Biscayne Blvd., Suite 502
North Miami, FL 33181
(305) 891-5199
(305) 893-9505 – Facsimile
rotbart@rotbartlaw.com

Counsel for Plaintiff Fred Nekouee